MILLER, Judge
(dissenting).
In affirming a verdict for the plaintiff, the majority comments “There is sufficient testimony and evidence, which the jury had a right to believe to support its finding of fact.” If our review is limited to questions of law there might be some basis for an affirmance. If we shut our eyes to the evidence presented by defendants there might be some basis for an affirmance. But the scope of our review is not limited to questions of law and we must also consider the evidence presented by defendants in determining whether plaintiff has proved his case by a preponderance of the evidence. The majority’s discussion of defendants’ evidence is quite scanty. A complete discussion is imperative.
Plaintiff caused a subpoena to be issued to Simmett Bankston who was present at the trial but plaintiff failed to call him to the stand. Mr. Bankston was called to the stand by Industrial and Hartford. Bank-ston was shown plaintiff’s exhibits P-9 and P-10 which had been hooked together and consisted of a safety belt on which was attached a cable with an eye in each end and a hook in each eye and a latch on each hook. He was asked whether he had purchased such a complete rig of this nature from Industrial in March or April of 1963 and he replied he had not purchased any completed assembly although he had .purchased parts from time to time. He testified that no one at Industrial had ever represented to him that such a rig would be suitable for the purposes of a safety line or lifeline-; that he knew that such a rig could not be safely used as a lifeline.
Mr. Grady Loftin testified on behalf of defendant, Industrial. From 1960 until 1967 Mr. Loftin was the only person who made up slings for Industrial. On February 6, 1964 (10 months after the accident) he made up a sling for plaintiff at plaintiff’s request and according, to plaintiff’s specifications. He testified that prior to that occasion he had never installed safety latches on a hook connected to a sling for Industrial or any customer of Industrial. The only reason he placed the safety latches on the hooks in this instance was because plaintiff specifically asked him to. Mr. Loftin explained to plaintiff that the hook and latch was not a safety hook and that the attachment was only to keep a *66 sling on the hook when supporting a dead weight. Loftin testified that he checked his records to see whether he had at any time prior to February of 1964 made up a rig of the type which plaintiff requested. His search revealed that he had never made up such a rig for Industrial or a customer of Industrial and if he had done so he stated he would have had a record of it. He also testified that he had never seen a rig of the type of P-10 used as a lifeline. This hook and safety latch was intended only as a hoist hook to hoist dead weight. He stated that if this particular rig were required it would have to be made up because Industrial did not keep such rigs in stock.
Mr. James Malcolm Richmond testified for Industrial. He had been employed by Industrial since 1963. Mr. Richmond was shown plaintiff’s exhibit P-10 and he testified that Industrial had never carried such a rig and that no one could have such an item assembled at their store within 10 or 12 minutes. He stated that he had served plaintiff on February 6, 1964 when plaintiff came in to have the special rig made up. He told plaintiff that he would have to come back later in the day because Mr. Loftin came in at that time and he made up all of their rigs. He testified that if plaintiff had told him he wanted such a rig for use as a lifeline he would have told him it was not suitable for that purpose. He verified that an apparatus of this kind would be used only for the lifting of dead weight.
James Ray Gnagie was called as a witness for Industrial. He was the warehouse manager for Industrial during the period between January through April of 1963. He testified that all of the slings made up for Industrial were made by Mr. Loftin. He was shown P-10 and testified he had never represented such a rig as being suitable for a safety or lifeline, and that if anyone had wanted to purchase a sling with hooks in the eyes it would have to be made up by Grady Loftin on a special order and could not have been merely picked up at Industrial.
Paul Burkes was called as a witness for defendant, American Hoist. He is the salesmanager for the western part of the country and he testified that the type of hook involved was used only for raising or hoisting static loads and that this type of hook and equipment had never been used or advertised to be used on safety belts or safety lines. American Hoist also called Robert E. Timberlake, an engineer who stated that the hook in question was for hoisting dead loads and not for use as a lifeline.
It is true that the finding of the trial court should not be disturbed unless found to be manifestly erroneous. Here, however, the error is manifest.
Simply stated, the plaintiff has failed to prove his case by a preponderance of the evidence. The testimony establishes the fact that this particular type of safety belt latch assembly was not sold in a completed unit. It had to be fashioned together from various parts. The preponderance of the testimony showed that it took much longer than 10 to 12 minutes to fashion these various items into a complete rig; yet plaintiff’s witness, Aucoin, stated that Bankston stayed at Industrial only 10 or 12 minutes. It thus follows that Bankston did not emerge from Industrial’s warehouse with a completed rig assembled by Industrial for use as a lifeline.
It appears that plaintiff’s case rests entirely on circumstantial evidence. Since the jury had evidence that Bankston came out of the store with the completed assembly, it was proved that the merchant represented the flimsy latch as safe to use in a lifeline assembly. But the jury was not charged as to the rule when applying circumstantial evidence. That rule is:
Where the facts and circumstances from which the finding is made are clearly established, and the inference is the ONLY ONE WHICH CAN FAIRLY *67 AND REASONABLY BE DEDUCED THEREFROM, the ultimate fact can be found from these circumstances. Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755, 762 (1958). See also LSA-R.S. 15:438.
The circumstantial evidence relied on by the trial jury and approved by the majority does not meet this test.
Concisely put, neither American Hoist nor Industrial were responsible for the confection of this particular assembly and it was not established that either represented the latch as safe for use in a lifeline assembly. Plaintiff has not carried the burden of proof.
Moreover the use of this assembly as a lifeline was so hazardous on its face that plaintiff, experienced in such undertakings, was contributorily negligent in using the assembly as a lifeline. The overwhelming testimony shows that this rig should not have been used as a lifeline. Plaintiff admits he had never used such a rig before. That the use of this particular flimsy latch in a lifeline assembly was hazardous is not only undisputed, it was affirmatively established by witnesses for both plaintiff and defendants.
There was no defect in any of the equipment. Plaintiff simply misused a flimsy latch which everyone agrees could not be safely used in a lifeline assembly. No evidence suggested that defendant represented this latch as a useful part of a lifeline assembly, except the circumstance that, according to Aucoin, Bankston came out of the store with the completed assembly. Even if Bankston did have the entire assembly when he came out of the store, there is no proof that defendant represented this latch as safe for use as a lifeline. I fail to understand how we can hold a merchant responsible for an obvious misuse of an item — particularly when there is not one word of testimony to the effect that the merchant represented the latch as useful in the lifeline assembly.
I respectfully dissent.